Pro Se 1 (Rev. 09/16) Complaint for a Civil Case

# UNITED STATES DISTRICT COURT
for the
District of Massachusetts

Nicholas McDaniels
) Case No. _____
) (to be filled in by the Clerk's Office)
Plaintiff(s)
(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)

Jury Trial: (check one) ☐ Yes ☐ No

-v-

Mount Auburn Athletic Club
Defendant(s)
(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)

FILED IN CLERKS OFFICE
U.S. DISTRICT COURT
DISTRICT OF MASS.
2019 OCT 25 PM 1:34

## COMPLAINT FOR A CIVIL CASE

I. The Parties to This Complaint

A. The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

Name: Nicholas McDaniels
Street Address: 15 Charlotte St.
City and County: Boston, Suffolk
State and Zip Code: MA, 02121
Telephone Number: 781-201-1892
E-mail Address: mcdanielsnick5@gmail.com

B. The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title (if known). Attach additional pages if needed.

Defendant No. 1
- Name: Mount Auburn Athletic Club
- Job or Title (if known):
- Street Address: 57 Coolidge Ave
- City and County: Watertown, Middlesex
- State and Zip Code: MA, 02472
- Telephone Number: 617-923-2255
- E-mail Address (if known):

Defendant No. 2
- Name:
- Job or Title (if known):
- Street Address:
- City and County:
- State and Zip Code:
- Telephone Number:
- E-mail Address (if known):

Defendant No. 3
- Name:
- Job or Title (if known):
- Street Address:
- City and County:
- State and Zip Code:
- Telephone Number:
- E-mail Address (if known):

Defendant No. 4
- Name:
- Job or Title (if known):
- Street Address:
- City and County:
- State and Zip Code:
- Telephone Number:
- E-mail Address (if known):

## II. Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case. In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction? *(check all that apply)*

[X] Federal question          [ ] Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A. If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

M.G.L 151B Section 4 Paragraph 1 and Title VII

### B. If the Basis for Jurisdiction Is Diversity of Citizenship

1. The Plaintiff(s)

    a. If the plaintiff is an individual

       The plaintiff, *(name)* _____, is a citizen of the State of *(name)* _____.

    b. If the plaintiff is a corporation

       The plaintiff, *(name)* _____, is incorporated under the laws of the State of *(name)* _____,
       and has its principal place of business in the State of *(name)* _____.

    *(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2. The Defendant(s)

    a. If the defendant is an individual

       The defendant, *(name)* _____, is a citizen of the State of *(name)* _____. Or is a citizen of *(foreign nation)* _____.

      b.    If the defendant is a corporation

The defendant, *(name)* _____, is incorporated under the laws of the State of *(name)* _____, and has its principal place of business in the State of *(name)* _____.

Or is incorporated under the laws of *(foreign nation)* _____, and has its principal place of business in *(name)* _____.

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3.    The Amount in Controversy

The amount in controversy-the amount the plaintiff claims the defendant owes or the amount at stake-is more than $75,000, not counting interest and costs of court, because *(explain)*:

## III. Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

*See Attached*

## IV. Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

*See Attached*

## V. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 10/25/19

Signature of Plaintiff: Michole McDaniels

Printed Name of Plaintiff: Nicholas McDaniels

### B. For Attorneys

Date of signing: 

Signature of Attorney

Printed Name of Attorney

Bar Number

Name of Law Firm

Street Address

State and Zip Code

Telephone Number

E-mail Address

Nicholas McDaniels 1

Statement of Claim

EEOC Docket No.: 16C-2019-00175

1. I, Nicholas McDaniels, the Plaintiff, believe Mount Auburn Athletic Club, located in Watertown,MA, a member of the International Health, Racquet & Sportsclub Association (IHRSA), hired me as a front desk associate with the intention to terminate me and terminated me making me a means to an end by way of Mount Auburn Athletic Club having a racist discriminatory preference to hire white female front desk staff. I, Nicholas McDaniels, believe that I was discriminated against by Mount Auburn Athletic Club on the basis I am an African American Black male.

I was hired as a front desk associate for Mount Auburn Athletic Club, a member of the International Health, Racquet & Sportsclub Association (IHRSA) in May 2017. I was the only African American Black male front desk associate on Mount Auburn Athletic Club front desk staff during my employment. I believe I was the first African American Black male hired as a front desk associate for the Mount Auburn Athletic Club in its history of operation since the 1970s or the first African American Black male hired as a front desk associate in an extended period of time. I received positive performance evaluations working as a front desk associate for Mount Auburn Athletic Club via email. I never received a strike according to Mount Auburn Athletic Club Disciplinary Policy working as a front desk associate for Mount Auburn Athletic Club. My direct supervisor was Matt Cote, a White male. During my employment I worked with about ten (10) front desk associates. About seven (7) were White females, and three (3) were White males. Mount Auburn Athletic Club employs 25+ people.

In or around Fall 2017, I applied for a promotion to a Members Services position and was rejected a fair opportunity when interviewing for a promotion as I agreed via email with Lauren Prokator, White female, to be a part of a group interview between myself, Jason Deranian, White male and Matt Cote, but I was only interviewed by Jason Deranian. I did not receive the promotion. I believe my application for promotion was never seriously considered and I was rejected a fair opportunity when interviewing for promotion because I am an African American Black male.

In or around December 5, 2017 Rachel Cotton, White female, was hired as a front desk associate and began receiving Mount Auburn Athletic Club emails as part of the front desk associate staff. Rachel Cotton had less experience than I did. In or around December 12, 2017 Elizabeth McHugh, white female, was hired as front desk associate at Mount Auburn Athletic Club. Elizabeth McHugh had less experience than I did. Between in or around late December 2017 and March 2018, Rachel Cotton, who was hired after me and not my supervisor, started telling me how to do my job and made innappropriate/appalling comments in a racially inspired bigoted passive aggressive fashion. I spoke to Matt Cote about the issues on numerous occasions and no mediation between Rachel Cotton and I took place together. In February 2018 I confided in Mount Auburn Athletic Club employee Louisa Paine, white female, about the racially inspired bigoted passive aggressive micromanagement/abuse Rachel Cotton was inflicting on me. No mediation between Rachel Cotton and I took place together however numerous emails concerning front desk job description and policies between in or around late December 2017 and March 2018 were sent to front desk staff as a result of the issues I was having with Rachel Cotton. I believe that Rachel Cotton and I went through no mediation together for my issues with her and Rachel Cotton was not diciplined for her

racially inspired bigoted passive aggressive micromanagement/abuse because she was racially preferred by Mount Auburn Athletic Club management for being a white female and I am an African American Black male.

In or around Winter 2018 Mount Auburn Athletic Club paid front desk associates Laura Dee, white female and Elizabeth McHugh, white female, to do Member Services work as listed in the Mount Auburn Athletic Club Member Services job description by working to complete health insurance reimbursement requests without the Member Services title. As I mentioned before, I applied for a Members Services position in Fall 2017 and I did not receive the promotion. Elizabeth McHugh had less experience than I did. I believe Elizabeth McHugh was promoted by management to do Member Services work without Member Services title and not me because she was racially preferred for being a white female and I am an African American Black male.

March 14 2018, Rachel Cotton expanded on her racially inspired bigoted passive aggressive micromanagement/abuse mockingly texting me in an attempt to sell me Boston Celtics tickets. At this point Rachel Cotton and I were no longer working shifts together regularly and I believe because she wasn't seeing me as much in person and she still wished to inflict her racially inspired bigoted passive aggressive micromanagement/abuse against me so she used a cell phone to do so because I am an African American Black male. I reported the incident to my supervisor Matt Cote and nothing was done.

In or around late March 2018, I spoke to my supervisor, Matt Cote, about the opportunity I had to play professional Arena Football with the Maine Mammoths and told him that I could continue to work over the summer during the Arena Football season but my availability would change and after the Arena Football season I will go back to having more availability to work as I wanted to keep my job for the foreseeable future. He was excited about the idea, and said things like "Cool," and texted me "Good luck".

In or around April 2018 Lindsay Mackenzie, white female, was hired at Mount Auburn Athletic Club. Lindsay Mackenzie had less experience than I did.

Over the course of my 2018 Arena Football season with the Maine Mammoths I was assigned shifts to work from my supervisor Matt Cote every Sunday. My Arena Football season with the Maine Mammoths concluded August 4 2018 with the exception of team physicals and exit meetings. While working on shift Sunday August 5 2018 I spoke with my supervisor Matt Cote about how the Arena football season concluded and how I would like to update my availability to specific times on weekdays and not weekends because I was asked to coach pop warner football. Matt Cote instructed me to update my availability on our scheduling application "When I work". I also texted my supervisor Matt Cote August 5 2018 as I may have been running late while taking a lunch break as I did not want him to think ill of me. In or around the second week of August, 2018, I logged into the "When I Work" app to update and increase my availability for the Fall 2018. Instead of receiving notification from my supervisor Matt Cote of hours that I would be working, I received no response. In or around the second week of August 2018 I began coaching with the Mission Hill Fenway Buccaneers, the team president was Mike Lesley.

Nicholas McDaniels 3

## Statement of Claim

I worked my assigned shift at the Mount Auburn Athletic Club Sunday August 12 2018. August 13 2018 I used an "inbody scale" at Mount Auburn Athletic Club at about 1:15pm and I have a printed copy of my results. On either August 12 2018 or August 13 2018 my supervisor Matt Cote told me about how Jacqueline Kane, white female, was going to be hired and I should greet her when I see her. August 15, 2018 a formal email went out to Mount Auburn Athletic Club staff stating Jacqueline Kane is a front desk associate. Jackie Kane had less experience than I did.

August 23, 2018 my supervisor Matt Cote sent an email out with the front desk schedule and I was not assigned a shift for the next coming weeks even though I had previously updated my availability as instructed by my supervisor Matt Cote.

Throughout September 2018 I frequented the Mount Auburn Athletic Club as my membership allowed while at times taking pictures I have from iphone while I was inside of the facility. September 5th 2018 my supervisor Matt Cote sent an email out with the front desk schedule in addition to information about a work party and I was not assigned a shift for the next coming weeks even though I had previously updated my availability as instructed by my supervisor Matt Cote. In September 2018 I confided in Mount Auburn Athletic Club employee Mayra, hispanic female, at Mount Auburn Athletic Club my concerns about not being assigned any shift to work since my last shift August 19, 2018 on multiple occasions. In September 2018 I had several conversations with my supervisor Matt Cote at the Mount Auburn Athletic Club concerning why I haven't been assigned any shifts to work since my last shift August 19, 2018 as I frequented the facility as my membership allowed. Donna Gordon, white female, and Jillian Nesgos, White female, members of the Mount Auburn Athletic Club, were witnesses to me frequenting Mount Auburn Athletic Club facility as my membership allowed throughout my employment at Mount Auburn Athletic Club. Donna Gordon gave me a tennis racket. Jillian Nesgos texted me September 18, 2018 a picture of a book she wanted to give me stating she would give me the book the next time I was at the club. I saw Jillian Nesgos soon after and received the book from her.

September 24, 2018, I went into Mount Auburn Athletic Club per usual as my membership allowed and happened to speak with Matt Cote in the lobby of the facility in front of several members of the club while a front desk staff person was present. Even though I had updated my availability at the conclusion of my arena football season in August as instructed by my supervisor Matt Cote and Matt Cote would receive email notification of this update, Matt Cote told me that I had not responded to email, email we discussed in person after the fact of me not responding via email, he needed my key back because "We don't have hours for you anymore". When I asked what he meant, Cote said, "This is not coming from me, I'm sorry." I never received a written termination letter until I went to Mount Auburn Athletic Club in or around October 8, 2018, to ask for written notice of me no longer working at Mount Auburn Athletic Club to give to the Department of Transitional Assistance and the Department of Unemployment Assistance. Matt Cote provided the written notice of me no longer working at Mount Auburn Athletic Club. I believe that directors Don Wong and Jason Duranian instructed Matt Cote to terminate me and may have done so with other Mount Auburn Athletic Club management including but not limited to brothers Paul Crowley, White male and Bill Crowley, White male, favoring my termination. In an email sent to me by Matt Cote during my employment at Mount Auburn Athletic Club Matt Cote named Paul, Jason, and Don as people who approached him about me and I needed to be aware of "when management

Nicholas McDaniels 4

Statement of Claim

is buzzing around". Although Bill Crowley was not named in the email I believe Bill Crowley as apart of Mount Auburn Club management may have been involved in my wrongful termination.

I believe a similarly situated White female employee would not have been terminated by Mount Auburn Athletic Club. I believe Mount Auburn Athletic Club lacked respect for my aspirations of being a prolonged employee at the facility because of the fact that I am an African American Black male. I, Nicholas McDaniels, the Plaintiff, believe Mount Auburn Athletic Club, located in Watertown,MA, a member of the International Health, Racquet & Sportsclub Association (IHRSA), hired me as a front desk associate with the intention to terminate me and terminated me making me a means to an end by way of Mount Auburn Athletic Club having a racist preference to hire white female front desk staff. I Nicholas McDaniels, believe that I was discriminated against by Mount Auburn Athletic Club on the basis of I am an African American Black male.

Relief

EEOC No.:16C-2019-00175

I, Nicholas McDaniels, the Plaintiff, in my research have not been able to find a similar previous court case to *Nicholas McDaniels v. Mount Auburn Athletic Club*. My case and/or Complaint against Mount Auburn Athletic Club may be used to set precedent for future generations. Mount Auburn Athletic Club needs to be made an example of how discrimination cannot and will not be tolerated within the United States of America. I'm going to have to live the rest of my life knowing I was terminated from Mount Auburn Athletic Club because I'm not white and Mount Auburn Athletic Club has a racist and discriminatory preference to hire white females to work as front desk associates all while I received positive performance evaluations working as a front desk associate for Mount Auburn Athletic Club via email and I never received a strike according to Mount Auburn Athletic Club Disciplinary Policy working as a front desk associate for Mount Auburn Athletic Club. Mount Auburn Athletic Club, a member of the IHRSA, after terminating me from Mount Auburn Athletic Club is likely to never again hire an African American Black male for the foreseeable future. Such discrimination and racism being alive and well in the 21st century is appalling. I remember Mike Miceli, White male, a front desk associate at Mount Auburn Athletic Club, he is about 70 years old if I recall correctly, which makes him about 44 years older than me. When I saw him working at Mount Auburn Athletic Club at his old age I had aspirations to do the same leading me to potentially giving 40+ years of my life to Mount Auburn Athletic Club. Given, I imagined myself countlessly reapplying for promotion until I ultimately received a promotion but nonetheless I thought I could have a lasting career with Mount Auburn Athletic Club as far as 40+ years into the future but now I know a lasting career with Mount Auburn Athletic Club is not possible since Mount Auburn Athletic Club has a racist and discriminatory preference to hire white female front desk staff. I understood the privileges I was in possession of as far as being employed by Mount Auburn Athletic Club, a member of the International Health, Racquet & Sportsclub Association (IHRSA). The privileges that came with employment at Mount Auburn Athletic Club included but was not limited to a membership to Mount Auburn Athletic Club. I have never been terminated from any job prior to being wrongfully terminated by Mount Auburn Athletic Club. Since I understood the privileges I was in possession of as far as being employed by Mount Auburn Athletic Club, I loved the privileges and appreciated them and now my heart is forever broken as a result of me being wrongfully terminated by Mount Auburn Athletic Club. In every aspect of my life I became attached and accustomed to Mount Auburn Athletic Club and its amenities. I have a regular day to day routine including but not limited to various exercises, stretches and strict diet the Mount Auburn Athletic Club provided me. My spirit is crushed knowing I was apart of an elite international association that according to https://www.ihrsa.org/about has 9,200 member clubs in 70 countries. Further, with Mount Auburn Athletic Club being a member of the International Health, Racquet & Sportsclub Association (IHRSA), Mount Auburn Athletic Club is supposed to follow certain guidelines and Mount Auburn Athletic Club has protections. More specifically, Mount Auburn Athletic Club is apart of "the corporation [that] also has such powers as are now or may hereafter be granted by the General Not-for-Profit Corporation Act of the State of Illinois" according to https://www.ihrsa.org/about/ihrsa-bylaws/. That said I wish to highlight the fact Mount Auburn Athletic Club can receive indemnity and advancement of expenses according to https://www.ihrsa.org/about/ihrsa-bylaws/.

As I was wrongfully terminated from my job as a front desk associate at Mount Auburn Athletic Club, I have since then been in a traumatic mental state, in my day to day thoughts I feel because I was

Relief

Nicholas McDaniels 2

wrongfully terminated by Mount Auburn Athletic Club I have been ruined in 70 countries globally as I was apart of an elite international association that according to https://www.ihrsa.org/about has 9,200 member clubs in 70 countries, also, since I was wrongfully terminated from my job as a front desk associate at Mount Auburn Athletic Club I have since then been unemployed and recieved unemployment benefits while unemployed, I have developed low self-esteem, as a result of the low self esteem I developed from being wrongfully terminated by Mount Auburn Athletic Club and reading and rereading some of the terrible and untrue racially indicative statements Mount Auburn Athletic Club said about me demonstrating their discriminatory beliefs toward African American Black males in their Position Statement they turned in in response to the Complaint I brought against them with Massachusetts Commission Against Discrimination (MCAD) I began to cope with drugs and alcohol and developed suicidal thoughts, I have been distant from family members including my mother Cheryl McDaniels, I have lost weight, I have trouble sleeping, I have problems focusing, I have body aches, I was admitted into Mount Arbor Hospital, a psychiatric hospital for an extended period of time due to Mount Auburn Athletic Club related anxiety and fear I developed as a result of being wrongfully terminated by Mount Auburn Athletic Club, and I did not recieve a thorough enough investigation when I filed a Complaint against Mount Auburn Athletic Club with Massachusetts Commission Against Discrimination (MCAD).

In or around the second week of February 2019 I involuntarily voluntarily was admitted into Mount Arbor Hospital in Jamaica Plain, MA, a psychiatric hospital, as I had to be sedated prior to being admitted into the psychiatric hospital with no access to my cell phone or email. I received medication throughout my time at the psychiatric hospital to treat various symptoms including but not limited to depression and insomnia. In or around the first week of March 2019 MCAD called a phone at the psychiatric hospital to reach me for the scheduled investigative conference between myself and Mount Auburn Athletic Club employees Jason Deranian and Don Wong. In or around the second week of March 2019 stemming from Mount Auburn Athletic Club related anxiety I developed as a result of being wrongfully terminated by Mount Auburn Athletic Club, I used scissors with permission of psychiatric hospital staff and rashly impulsively cut my hair I had been growing for 5 years. March 14 2019 I was discharged from the psychiatric hospital with a discharge plan I have to follow to present day, including but not limited to displacing me from my home state Massachusetts and medication to treat various symptoms including but not limited to depression and insomnia. As a result of Mount Auburn Athletic Club discriminating against me, for the first time in my life I have to be regularly medicated for the foreseeable future.

Over the course of the time between when my Complaint against the Mount Auburn Athletic Club was intitially filed with the MCAD until my complainant was closed by the MCAD a more thororugh investigation needed to take place on the part of Massachusetts Commission Against Discrimination as not enough witness statements were gathered regarding my complaint against Mount Auburn Athletic Club and procedural errors on the part of MCAD took place with the handling of information I gave to MCAD and the handling of information of what MCAD was suppose to give to me but did not give to me. An Affidavit of Elizabeth McHugh was not collected despite me naming her as the person who was promoted without title while having less experience than me. The particulars of my intake interview with the MCAD were severely and forcibly abridged. January 11 2018 while turning in my incomplete Rebuttal to Mount Auburn Athletic Club Position Statement at MCAD, MCAD told me if I needed help/assistance with my Rebuttal MCAD would provide someone who could help/assist me with my Rebuttal, I requested in writing "additional time and a person(s) who can take the time to assist me in my

Relief

Nicholas McDaniels 3

Rebuttal as I have had problems concentrating these past few months", MCAD never provided me a person to assist me with my Rebuttal. October 18 2019 I recieved a copy of my complaint against the Mount Auburn Athletic Club from the Massachusetts Commision Against Discrimination via email MCAD file/docket #18BEM03021. Reading my file I realized March 6 2018 I was supposed to receive an email from MCAD in regards to the next steps of the investigation taking place but I did not. The email was sent to "mcdanielsnick@gmail.com" whereas my email which was stated on my employment discrimination intake interview form is "mcdanielsnick5@gmail.com". Over the course of the time between when my Complaint against the Mount Auburn Athletic Club was intitially filed with the MCAD until my complainant was closed by the MCAD a more thororugh investigation needed to take place on the part of Massachusetts Commission Against Discrimination as not enough witness statements were gathered regarding my complaint against Mount Auburn Athletic Club and procedural errors on the part of MCAD took place with the handling of information I gave to MCAD and the handling of information of what MCAD was suppose to give to me but did not give to me. My Complaint against Mount Auburn Athletic Club for discriminating against me because I am an African American Black male in its entirety has yet to be heard. I need my Complaint against Mount Auburn Athletic Club for discriminating against me because I am an African American Black male to be heard in its entirety.

I know firsthand from working in the processing of various payments made to Mount Auburn Athletic Club as a former front desk associate at the Mount Auburn Athletic Club thousands of dollars were being paid to the Mount Auburn Athletic Club on an average daily basis. Mount Auburn Athletic Club operates 52 weeks out of the year only being scheduled to be closed on two days Labor Day and Christmas. With my firsthand knowledge of Mount Auburn Athletic Club revenue being a former front desk associate at Mount Auburn Athletic Club, Mount Auburn Athletic Club generates in or around $1,500 in revenue a day with its amenities not including membership fees. With Mount Auburn Athletic Club charging in or around at least $110 a month to its in or around 1,800 members, Mount Auburn Athletic Club generates in or around $6,387 in revenue a day in membership fees.

With Mount Auburn Athletic Club generating $1,500 a day in revenue with its amenities, in a 360 day year Mount Auburn Athletic Club will generate in the next 40 year span, the approximate amount of time it would take me to reach the age of Mike Miceli, approximately $21,600,000. With Mount Auburn Athletic Club generating $6,387 a day in revenue with its membership fees, in a 360 day year Mount Auburn Athletic Club will generate in the next 40 year span, the approximate amount of time it would take me to reach the age of Mike Miceli, approximately $91,972,800. Between Mount Auburn Athletic Club amenities and membership fees, Mount Auburn Athletic Club in the foreseeable future will generate approximately $94,132,800 in revenue.

I am seeking relief through having the court or a jury order compensation based on emotional distress damages and I am seeking relief through having the court or a jury order compensation based on punitive damages. I am seeking relief through compensation based on emotional distress damages because of the turmoil I'm going through and will remain going through for the foreseeable future after being wrongfully terminated by Mount Auburn Athletic Club, a member of the IHRSA, which was the stressor causing me to develop suicidal thoughts, having to be sedated for the first and hopefully last time in my life, being further hospitalized at Mount Arbor Hospital, a psychiatric hospital, for an extended period of time costing my insurance $21,871.39, and additionally having to be regularly medicated as part of the

Relief

Nicholas McDaniels 4

psychiatric hospital discharge plan for the foreseeable future. I am also seeking relief through having the court or jury order compensation based on punitive damages because I need the court or jury to prevent and/or discourage Mount Auburn Athletic Club from inflicting such hardship and undeserved mistreatment through discriminating against African American Black males by having a racist and discriminatory preference to hire white females to work as front desk associates.

Mount Auburn Athletic Club, a member of the IHRSA, metaphorically speaking killed the person I once was, literally speaking however, had I commited suicide, Mount Auburn Athletic Club, a member of the IHRSA, would have been the triggering factor causing my death. I'll never be the same the rest of my life. I find it particularly uncomfortable putting a number and/or price on what my life is worth as far as perhaps or supposedly remedying my Complaint against Mount Auburn Athletic Club because I personally feel as though putting a number and/or price on what my life is worth or putting a number and/or price on any human beings life for that matter resembles slavery and additionally I am not sure if I will be able to forgive Mount Auburn Athletic Club for discriminating against me regardless. However, there is an abundant amount of facts identifying Mount Auburn Athletic Club, a member of the IHRSA, as discriminating against me because I am and African American Black male all while at the same time Mount Auburn Athletic Club gave me positive performance evaluations via email during my employment as a front desk associate. If the court or jury was to order Mount Auburn Athletic Club to compensate me for my lasting and ongoing emotional distress with emotional distress damages and if the court or jury was to order Mount Auburn Athletic Club to compensate me as far as creating a potentially lasting and ongoing deterrent from Mount Auburn Athletic Club participating in discriminatory behavior with punitive damages, I would accept emotional distress damages in the amount of $132,800 and I would accept $4,000,000 in punitive damages as the total amount in damages would be both a demonstration of a firm stance on discrimination not being tolerated and also the total amount in damages would be the remainder of the over $90,000,000 Mount Auburn Athletic Club approximately will generate in the foreseeable future after discriminating against me or I would accept both emotional distress damages and punitive damages in the amount of whatever the court or jury sees fit whether less or more but what I need most importantly is for the wrongdoings of Mount Auburn Athletic Club, a member of the International Health, Racquet & Sportsclub Association (IHRSA), towards me to not happen to someone else.